**J. D. PITT** *et al.*, Defendants in Error, *v.* WILLIAM GENTLE, Plaintiff in Error.

1. *Contracts — Subscription, consideration for—Outlay—Woolen mill, benefit of to public.*— The expense or charge incurred in rebuilding a woolen mill is a sufficient consideration to support a promise to pay the amount pledged for that object by the signer of a subscription paper, without proof of any other or special consideration. (Workman v. Campbell, 46 Mo. 305.) In the rebuilding of an ordinary private establishment this doctrine would not hold. But a woolen mill, especially in the West, is something more than this. In a variety of ways it may be regarded as of benefit to the community at large, and to that extent a public enterprise.

### *Error to Louisiana Court of Common Pleas.*

*J. B. Henderson*, for plaintiff in error.

The subscription paper was a mere proposal to donate, and not an express promise or agreement to pay, as required by the statute (Wagn. Stat. 270, § 6), and constitutes no valid obligation which can be made the foundation of a suit. (Baird v. Thayer, 8 Blackf. 146; Ephraim v. Murdock, 7 Blackf. 10; Breeze R. 103; 8 Mass. 138, 292; 11 Mass. 114.) A request cannot be implied from the beneficial nature of the services to the subscribers. (Hamilton College v. Stewart, 1 Comst. 581.) There is no proof of acceptance by plaintiff. (9 Pet. 662; 11 Mass. 114.)

*Dryden & Dryden*, with *Anderson, Morrow & Anderson*, for defendants in error, cited Society in Troy v. Perry, 6 N. H. 164; George v. Harris, 4 N. H. 533; Harrison v. Stetson, 5 Pick. 506; Bryant v. Goodnow, *id.* 228; Warren v. Stearns, 19 Pick. 73; Barnes v. Perine, 9 Barb. 202; Homes v. Dana, 12 Mass. 190; Boutell v. Cowdin, 9 Mass. 254; Phelps v. Townsend, 8 Pick. 392; Com. Bank v. Nolan, 7 How., Miss., 508; 1 Sto. Cont. 555; 1 Pars. Cont. 431.

BLISS, Judge, delivered the opinion of the court.

This suit was brought upon the following paper, signed by defendant and others: " We, the undersigned, propose to donate

to J. D. Pitt, Edwin James and John Goldsberry the sums set opposite our names, to be used for the purpose of rebuilding a woolen mill in the town of Frankfort, Mo."

It is shown that a mill belonging to the persons named had been burned, and to induce them to rebuild, this subscription was circulated among the neighbors ; that the signers were not interested in the property, and that the owners rebuilt the mill, claiming to have done so upon the strength of the aid to be given by the subscription.

Under the circumstances, the paper must be taken as a promise to pay the several amounts opposite the donors' names. Such was the understanding of those who signed and those who received and acted upon it. The question then arises whether there was any consideration for the promise.

The case of the Trustees of Hamilton College v. Stewart, 1 N. Y., 582, is appealed to, to sustain the proposition that subscriptions of this kind are naked promises and cannot be enforced. The opinion in that case, if I understand it, goes further, in requiring a special consideration in order to sustain subscriptions for public objects, than has generally been supposed to be the law, although, as well remarked by Allen, J., in Barnes v. Perine, 12 N. Y. 23, " an attempt to reconcile all the cases which have been adjudged, touching the validity of voluntary engagements to pay money for charitable, educational, religious or other public purposes would be fruitless." It would seem in cases of that kind that no special consideration should be required, but when a corporation or association is authorized by law to receive a subscription and have applied money, or propose to apply the money subscribed to the object sought to be secured by the subscription, and according to its terms, the voluntary obligation should be a legal one. Or, in the language of the Supreme Court of Indiana in Johnston v. Wabash College, 2 Ind. 555, as applied to that case, " the accomplishment of the object in aid of which the money was promised, formed a good and valid consideration for the promise to pay it."

In Barnes v. Perine, the subscription was for the expenses of removing an old church and building a new one; and the trustees

having proceeded with the work, the subscription was sustained upon the ground that the expenses had been incurred at the request of the subscribers, though no such express request was contained in the subscription. And in Gittings v. Mayhew, 6 Md. 113, where the expenses had been incurred, to defray which the subscription was made, the court remarked: "In whatever uncertainty the law concerning voluntary subscriptions of this character may be at this time in consequence of the numerous decisions pronounced upon the subject, it appears to have been settled that when advances have been made, or expenses or liabilities incurred by others, in consequence of such subscription, before notice of withdrawal, this should as a general principle be deemed sufficient to make them obligatory, provided the advances are authorized by a fair and reasonable dependence on the subscription." This doctrine is consistent with Trustees of Hamilton College v. Stewart, and indeed I know of no case that has not gone as far, though many have gone farther. In considering the case at bar it is not necessary to go beyond it, for the record shows, and the jury under instruction found, that the plaintiffs, before suit brought, had expended their money in rebuilding their mill, and in reliance in part upon defendants' subscription.

In the Hamilton College case the court required a promise on the part of the trustees to do something as a consideration for defendants' subscription; that the undertaking not being mutual was not obligatory. But if the subscription had been for the erection of a college building or the purchase of a library, although at the time the trustees had not bound themselves to erect the building or make the purchase, still, if on the strength of the subscription they have incurred the contemplated expense, it would hardly have been held that the consideration was not complete.

This court, in Koch v. Ley, 38 Mo. 147, and in Workman v. Campbell, 46 Mo. 305, applied to subscriptions the universally received doctrine that an expense or charge to the promisee constitutes a valuable consideration for a promise; and although the cases there being considered were not precisely like the present, there is no difference in the principle involved.

But the further question arises whether the object for which the subscription was made was of such a private nature — the mill being plaintiff's property — as to make it but a private charity binding only upon the benevolent feelings or conscience of the subscriber.   It will not be claimed that an agreement merely to help one who has suffered loss, with no other consideration, can be enforced; although it is unnecessary to say if the agreement were to aid him in repairing the loss, and relying upon that agreement and the funds thereby to be furnished, he should proceed to repair it, whether or not it is founded upon such consideration as to validate it.

But in the case under consideration the property destroyed was something more than private.   In the West, mills of this kind are essential to enable families to carry on an important branch of domestic industry; and besides, they form *nuclei* of settlements and enhance the value of property where they are located.   The defendant, as well as his neighbors, was personally interested in having this one rebuilt, and may be supposed to have been moved in making his subscription by considerations of private interest as well as of benevolence.   I have, then, no hesitation in holding that the defendant and the public had sufficient interest in the undertaking to authorize the plaintiffs to trust to his promise to aid.

The validity of the subscription is the only important question raised by the record, and believing the action of the trial court to have been correct, I think the judgment should be affirmed. The other judges concur.